IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAWSTOP HOLDING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-1212 (LMB/MSN) |
| ) | |
| DREW HIRSHFELD, Performing the functions ) | |
| and duties of the Undersecretary of ) | |
| Commerce for Intellectual Property and ) | |
| Director of United States Patent and | |
| Trademark Office, | |
| | |
| Defendant. | |

MEMORANDUM OPINION

Before the Court are plaintiff Sawstop Holding LLC's ("plaintiff" or "Sawstop") Motion for Summary Judgment to Correct the Patent Term Adjustment for U.S. Patent 9,927,796 [Dkt. No. 13] and defendant Acting Director Drew Hirshfeld's ("defendant") Motion for Summary Judgment [Dkt. No. 18]. The motions have been fully briefed, and finding that oral argument will not assist the decisional process, the motions will be resolved on the papers submitted. For the reasons that follow, plaintiff's motion will be denied, and defendant's motion will be granted.

I. BACKGROUND

A. **Statutory & Regulatory Framework**

The parties have previously appeared before this Court in a matter involving the same statutes and regulations that are at issue in this action. See Sawstop Holding, LLC v. Iancu, 496 F. Supp. 3d 944 (E.D. Va. 2020) ("Sawstop I"). The relevant statutory and regulatory framework was set out in Sawstop I as follows:

> Before 1999, the term of a patent was 17 years, and it began to run from the date the patent issued. In part to speed up the process for patent review, the American Inventors Protection Act ("AIPA") changed the term of a patent to 20

> years, but started that time from the date the first application for the patent was filed. 35 U.S.C. § 154(a)(2). As a result of this change, delays in the United States Patent and Trademark Office's ("USPTO") review of an application could reduce the term of the patent which ultimately issued. To address that problem, the AIPA provides for adjustment of the patent term for "any undue delays in patent examination caused by the PTO." Pfizer, Inc. v. Lee, 811 F.3d 466, 468 (Fed. Cir. 2016); 35 U.S.C. § 154(b)(1). Three kinds of delay by the USPTO will result in such adjustment. The first two—involving the USPTO's failure to respond within required deadlines to various application actions, and, with some exceptions, a delay of more than three years in issuing a patent—are not implicated in this litigation. See id. at § 154(b)(1)(A)-(B). The third, found in § 154(b)(1)(C), grants adjustments based on the time an application is pending due to derivative proceedings, secrecy orders, or appeals. As relevant to this action, the AIPA provides:
>
>> "if the issue of an original patent is delayed due to ... (iii) appellate review by the Patent Trial and Appeal Board or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability, the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be."
>
> The USPTO regulation interpreting this statute explains that a patent term adjustment under § 154(b)(1)(C)(iii) is equal to "the number of days, if any, in the period beginning on the date on which jurisdiction over the application passes to the Patent Trial and Appeal Board ... and ending on the date of a final decision in favor of the applicant by the Patent Trial and Appeal Board or by a Federal court." 37 C.F.R. § 1.703(e). In its published responses to comments submitted during the promulgation of § 1.703(e), the USPTO explained that "[a] 'final decision in favor of applicant' is understood to include any final decision of the Board of Patent Appeals and Interferences or Federal court that reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection)." Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term; Final Rule, 65 Fed. Reg. 56366-01, 56376 (Sept. 18, 2000).

Sawstop I, 496 F. Supp. 3d at 945.

**B. Procedural History**

All of the facts relevant to this civil action are set out in the USPTO Administrative Record ("AR"). [Dkt. No. 8]. These agreed facts establish that plaintiff filed an application to patent a "band saw with improved safety system" on May 15, 2002. AR8. That application was assigned serial number 10/146,527 ("'527 Application"), and contained claims 1-20. AR73-78.

2

On March 23, 2005, plaintiff filed an amendment to the '527 Application, cancelling claims 4, 10-18, and 20, and making other amendments to several of the remaining claims. AR208-11. On June 14, 2005, the USPTO examiner issued a final rejection of the remaining claims (claims 1-3, 5-9, and 19). AR245-53. As is relevant to this action, the examiner found claim 1 unpatentable on two grounds. First, the examiner provisionally rejected claim 1 "under the judicially created doctrine of obviousness-type double patenting[,] as being unpatentable over claims 1-8" of another pending application that had previously been filed by plaintiff, Application No. 10/100,211 ("'211 Application"). AR249. Because the conflicting claims in plaintiff's '211 Application had not in fact been patented, the rejection was provisional. Id. The examiner also found that claim 1 was "rejected under 35 U.S.C. [§] 102(b) as being anticipated by Friemann et al. ([U.S. Patent No.] 3,858,095" ("Friemann patent"). AR250.[1]

On September 2, 2005, plaintiff filed a Request for Continued Examination and Third Amendment to the '527 Application, which did not amend claim 1 but argued there were "points of distinction" in the prior art which the examiner had not considered. AR 267, 272. On June 20, 2006, the USPTO examiner issued a final rejection of claims 1-3, 5-9, and 19, which "fully considered" plaintiff's arguments in the request for re-examination, but found that they were "not persuasive" and reiterated the earlier findings. AR402. Specifically, the examiner again found that claim 1 was provisionally rejected for obviousness-type double patenting based on plaintiff's pending '211 Application, because plaintiff's two pending applications "differ only in the claim terminology used but encompass the same subject matter." AR400. The rejection was still

---

[1] The examiner also provisionally rejected claim 19 for obviousness-type double patenting, and found that claims 2-3, 5-9, and 19 were anticipated by the Friemann patent, and that claim 9 was unpatentable as obvious "over Friemann in view of Plangetis ([U.S. Patent No.] 5,239,978)." AR249-51.

3

provisional, because the '211 Application remained pending. The examiner also confirmed the previous finding that claim 1 was unpatentable because it was anticipated by the Friemann patent. AR401.

On September 19, 2006, plaintiff filed a Notice of Appeal of the examiner's decision in the Board of Patent Appeals and Interferences ("the Board"). AR414. In an August 21, 2009 Decision on Appeal, the Board affirmed the examiner's rejection of claim 1 on both grounds, finding no error with the examiner's determination that claim 1 was anticipated by the Friemann patent and was unpatentable in light of "provisional obviousness-type double patenting." AR547. On the other hand, the Board reversed the examiner's rejection of claims 2-3, 5-9, and 19, identifying various distinctions between these claims and the Friemann patent and between claim 19 and the '211 Application. AR544-47.

Plaintiff timely sought a de novo review of the Board's rejection of claim 1 in the United States District Court for the District of Columbia, pursuant to 35 U.S.C. § 145. AR619. While that action was pending, the same district court decided an appeal addressing plaintiff's '211 Application. In that opinion, the district court held that the claims in the '211 Application were neither anticipated nor rendered obvious by the Friemann patent. AR560-618. Relying on its reasoning in the appeal of the rejection of the '211 Application, the district court, on November 29, 2016, reversed the USPTO's rejection of claim 1 on the ground of anticipation, and remanded the '527 Application to the USPTO for further review. The district court's order did not address the provisional rejection for double patenting.[2] The district court's opinion in the

---

[2] The full text of the district court's order stated:

> For the reasons set forth in the Memorandum Opinion issued August 31, 2016 in [the appeal of the '211 Application], the Board of Patent Appeals and Interferences' anticipation rejection of [Sawstop's] claim 1 in application 10/146,527 is hereby

4

appeal of the '211 Application likewise did not address any potential overlap with the pending '527 Application. See AR560-618.

On February 14, 2017, the Board issued an Order remanding the '527 Application to the examiner. The Order stated:

> On November 29, 2016, the United States District Court of the District of Columbia rendered judgment in this appeal. The Court reversed the decision of the Patent Trial and Appeal Board and remanded the application to the U.S. Patent and Trademark Office for further review consistent with the Court's findings.
>
> Accordingly, this application is remanded to the Examiner for further proceedings consistent with the judgement of the Court.

AR621.

On February 27, 2021, the examiner issued a communication to plaintiff, responding to the Board's remand of the '527 Application. The examiner found that further action was needed on the '527 Application, explaining:

> In the present case, there is an outstanding provisional obviousness-type double patenting rejection of claim 1. Independent claim 19 is allowable as written. Claim 2 remains dependent from rejected claim 1. Claims 3 and 5-9 remain dependent either directly or ultimately from claim 2.
>
> Applicant is given THIRTY (30) DAYS to file either:
>
> 1. An appropriate terminal disclaimer which would obviate the provisional obviousness-type double-patenting rejection of claim 1; or
>
> 2. An amendment cancelling claim 1 and converting dependent claim 2 to independent form.

AR623.

---

> REVERSED. Patent application 10/146,527 is REMANDED to the Patent and Trademark Office for further review consistent with this Court's findings in [the appeal of the '211 Application].

AR619.

On March 24, 2017, plaintiff responded to the examiner by filing an amendment to the '527 Application, which cancelled claim 1, the only claim that had been before the district court. The amendment then incorporated some of claim 1's limitations into claim 2, and added an additional limitation into claim 2 that was not present in the original claim 1. Compare AR445 (language of claims 1 and 2 as they appeared before the district court in the appeal of the '527 Application) with AR627 (adding the following limitation not previously in claim 1 to claim 2: "where the reaction system includes at least one component movable from a first position away from the blade to a second position in contact with the blade"). Before cancelling claim 1, plaintiff did not request further examination in light of the district court's decision, or otherwise contest that as drafted, claim 1 was properly rejected for obviousness-type double patenting.

On April 13, 2017, the USPTO issued a Notice of Allowance for remaining claims 2-3, 5-9, and 19 of the '527 Application. AR633. On July 14, 2017, plaintiff filed another Request for Continued Examination and Amendment, in which it proposed additional amendments to claims 2 and 8-9, substituted certain drawings, and added a new claim 21; however, plaintiff did not request further examination on former claim 1 or attempt to reinstate it as an independent claim. AR658-61.

On August 8, 2017, plaintiff's '211 Application issued as U.S. Patent No. 9,724,840 ("'840 Patent"), which included the claim that led the examiner and Board to conclude that claim 1 of the '527 Application should be rejected for obviousness-type double patenting. On March 27, 2018, claims 2-3, 5-9, and 19 of the '527 Application issued as U.S. Patent Number 9,927,796 ("'796 Patent"). AR8.

The '796 Patent was initially granted a patent term adjustment of 1,132 days, AR8, which consisted of 335 days for USPTO delay under 35 U.S.C. § 154(b)(1)(A), 366 days under

6

§ 154(b)(1)(B), and 838 days under § 154(b)(1)(C),[3] reduced by 407 days attributable to applicant delay. AR841. On April 30, 2018, plaintiff submitted an Application for Patent Term Adjustment, requesting a total adjustment of 3,792 days. As relevant to the challenges plaintiff brings in this lawsuit, plaintiff requested 3,495 additional days under § 154(b)(1)(C), arguing that the USPTO incorrectly included "only the 838 days from May 7, 2007, the date jurisdiction passed to the Board, to August 21, 2009, the date of the Board's decision." AR834. Plaintiff argued that the adjustment should also have included "the days spent on appeal to the Federal Court." Id. The USPTO issued a Redetermination of Patent Term Adjustment which rejected plaintiff's request for an additional adjustment pursuant to § 154(b)(1)(C) on the grounds that the district "court decision did not reverse all the rejections of claim 1." AR841-44. Plaintiff then submitted a Request for Reconsideration of a Redetermination of Patent Term Adjustment, requesting that the USPTO either reconsider its conclusion or issue a final director's decision to permit plaintiff to seek judicial review pursuant to 35 U.S.C. § 154(b)(4). AR847.

On October 7, 2020, the USPTO denied plaintiff's request for reconsideration ("Director's Decision"), this time in the form of a final order permitting judicial review. The Director's Decision observed that a patent term adjustment under § 154(b)(1)(C) is only appropriate if both of two conditions are met: "(1) The decision reverses <u>all</u> the rejections of the claim, and (2) The decision does not subject the claim to a rejection." AR868 (emphasis in original). Applying that framework to the '527 Application, the Director's Decision held:

> Applicant's calculation of the period of C delay is only correct if the <u>patent was issued under</u> a decision reversing the adverse determination of patentability for Claim 1. The record here is insufficient to establish the <u>patent was issued under</u> a

---

[3] The 838 days awarded under § 154(b)(1)(C) represents the number of days that the '527 Application was pending before the Board; it does not include any days for the period of time when plaintiff's appeal of the Board's decision was pending before the district court. That number of days was reduced to 767 after plaintiff's first request for redetermination. AR867.

7

> decision reversing all rejections of Claim 1 since the [double-patenting] rejection of claim 1 remained after the [district court's] decision. The patent issued not because all of the rejections of Claim 1 were reversed, but because rejected Claim 1 was cancelled by applicant to secure the allowance.
>
> Applicant could have cancelled Claim 1 following the issuance of the Board decision on August 21, 2009, and allowed the application to issue as a patent with the remaining claims. However, Applicant did not take such an action. Instead, Applicant cancel[led] Claim 1 following the issuance of the District Court decision on November 19, 2016, and allowed the application to issue as a patent with the remaining claims. The patent <u>was not issued under</u> a decision reversing all of the Office's rejections of Claim 1 because the patent issued without Claim 1 after Applicant cancel[led] Claim 1 in response to a communication from the Office stating the [double-patenting] Rejection was still outstanding.

AR868-69 (emphasis in original).

Plaintiff has brought this action challenging the USPTO's denial of its request for an additional patent term adjustment under § 154(b)(1)(C). The Complaint's sole count alleges that "[t]he Director's Decision incorrectly interpreted the phrase 'decision in the review reversing an adverse determination of patentability' to add a requirement that the decision reverse <u>all</u> rejections of a given claim." [Dkt. No. 1] at ¶ 29 (emphasis in original).

## II. DISCUSSION

In its motion for summary judgment, plaintiff acknowledges that the only issue before this Court is the "legal determination of whether the [US]PTO correctly decided that § 154(b)(1)(C) does not apply" when a patent issues after a district court "reverses a rejection of a pending claim, but does not explicitly address a provisional rejection of the same claim." [Dkt. No. 14] at 9-10.

### A. **Standard of Review**

The Federal Circuit "review[s] a district court's grant of summary judgment under the law of the regional circuit." <u>Intra-Cellular Therapies, Inc. v. Iancu</u>, 938 F.3d 1371, 1379 (Fed. Cir. 2019). In the Fourth Circuit, summary judgment is appropriate where "there is no genuine

8

issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). Where there are cross-motions for summary judgment, a court "consider[s] and rule[s] upon each party's motion separately to determine whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Penn. Mfrs. Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

Under the APA, a court should set aside agency actions and findings only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Intra-Cellular, 938 F.3d at 1379. Patent term adjustment determinations are specifically subject to the APA's standard of review. 35 U.S.C. § 154(b)(4)(A) (declaring that "Chapter 7 of title 5 shall apply" to requests for reconsideration of patent term adjustment determinations).

### B. Analysis

#### 1. The Statute

Plaintiff argues that the USPTO's interpretation of § 154(b)(1)(C)(iii) in the Director's Decision "was not faithful to the plain language of the statute," because the "statutory text refers to an adverse determination of patentability in the singular form, not all adverse determinations of patentability in the plural form." [Dkt. No. 14] at 16 (emphasis in original). From this, plaintiff concludes that "Congress intended for a patent term adjustment to apply when the patent issues under a decision from [a] district court reversing an adverse determination for a pending claim, regardless of whether the decision reversed all adverse determinations for that claim." Id. Plaintiff made an essentially identical argument in Sawstop I, which involved plaintiff's efforts to get a patent term adjustment for the time an application spent on appeal to the PTAB, because the PTAB reversed an examiner's finding that a claim should be rejected on one ground, and

instead affirmed the rejection of the claim on a different ground. See Sawstop I, 496 F. Supp. 3d at 948 ("[P]laintiff appears to be arguing that by subjecting claim 11 to a new ground of rejection, the PTAB necessarily reversed an adverse determination of patentability."). In Sawstop I, the Court rejected plaintiff's argument, holding that the "unambiguous language [of § 154(b)(1)(C)(iii)] imposes two requirements: that an adverse determination of patentability be reversed, and that the application reviewed in that appeal issue as a patent as a result of that reversal." Id. Just as in the previous lawsuit, plaintiff has not established that the '796 patent meets either requirement.

The plain language of § 154(b)(1)(C)(iii) requires not just that the reviewing court reverse any determination made by the USPTO, but specifically that the court "revers[e] an adverse determination of patentability." (Emphasis added). That statutory language is key, because, as defendant correctly argues, the only claim at issue before the district court (claim 1) "remained unpatentable (that is, subject to at least one rejection) both before and after the District Court decision." [Dkt. No. 19] at 14. Because the district court did not address, much less overturn, the Board's finding that claim 1 was unpatentable on the grounds of obviousness-type double patenting, the court's opinion cannot be described as "reversing an adverse determination of patentability." § 154(b)(1)(C)(iii).

To get around this problem, plaintiff argues that Board's double-patenting rejection was not a ground for unpatentability, because it was provisional unless and until the '211 Application issued as a patent. [Dkt. No. 14] at 13-14. The only authorities cited by plaintiff in support of this argument establish that provisional rejections can be "obviated by future events," Application of Wetterau, 356 F.2d 556, 558 (C.C.P.A. 1966); see also In re Mott, 539 F.2d 1291, 1296 (C.C.P.A. 1976); however, there is no dispute that unless "future events" include the withdrawal

or amendment of the conflicting application, provisional rejections will prevent a claim from issuing as a patent. Plaintiff did not withdraw or amend the '211 Application before the district court's decision, meaning that the provisional rejection was not "obviated" and claim 1 was not patentable at the time of the district court's remand. Nor did plaintiff make any effort to "obviate" the double-patenting rejection by amending or withdrawing the '211 Application (which eventually issued as a patent) in response to the district court's remand. Instead of addressing the provisional rejection that remained in effect following remand, plaintiff promptly cancelled the only claim which the district court had considered. AR627; see [Dkt. No. 19] at 19.

Plaintiff next argues that even if the provisional double-patenting rejection were an adverse determination of patentability, it was "implicitly reversed" by the district court's order. [Dkt. No. 14] at 14. This argument finds no support in the text of the district court's order, which specifically states that the "anticipation rejection" of claim 1 is reversed, and makes no reference to the double-patenting rejection. AR619. Lacking support in the text of the order, plaintiff looks instead to its context, arguing that "[t]he Examiner's obviousness-type double-patenting rejection was based on Sawstop's co-pending '211 Application in combination with the Friemann reference. See AR400. Thus, the rejection hinged on whether Friedmann qualified as prior art." [Dkt. No. 14] at 14. Plaintiff's argument is not correct. Although in affirming the examiner's finding that claim 1 must be rejected for double-patenting, the Board noted that it was "provisionally rejected … as being unpatentable over claim 1 of the copending Application No. 10/100,211 in view of Friemann," AR400, the examiner emphasized that claim 1 of the '527 Application and the comparable claims in the '211 Application were "not patentably distinct from each other because they differ only in the claim terminology used but encompass the same subject matter." AR249 (emphasis added). Specifically, the examiner found that claims 1 and 19

11

in the '527 Application and the relevant claims in the '211 Application "include blade stopping mechanisms that stop the motion of a band saw within 10 milliseconds after detection of an unsafe condition." Id. Defendant correctly summarizes the significance of the examiner's finding:

> The examiner relied upon the same disclosure of blade stopping mechanisms in claim 1 of the copending '211 Application in support of the provisional double-patenting rejection. The district court's finding that Friemann did not enable this capacity sheds no light on whether both sets of claims enabled the capacity. This finding by the examiner remains undisturbed after the PTAB's and District Court's decisions.

[Dkt. No. 25] at 12 n.5.

Because the district court's decision did not expressly address the double-patenting rejection, and because its findings regarding the Friemann patent did not resolve the double-patenting issue identified by the examiner, there is no support in the record from which this Court could find that the double-patenting rejection was "implicitly reversed" by the district court opinion. Moreover, on remand plaintiff had an opportunity to argue that the rejection was implicitly reversed by the district court when the examiner instructed plaintiff to address the double-patenting rejection by filing either "an appropriate terminal disclaimer which would obviate the provisional obviousness-type double-patenting rejection" or "an amendment cancelling claim 1." AR623. Without requesting further examination, plaintiff elected to cancel claim 1. See [Dkt. No. 25] at 11-12 (quoting Wallace v. Dep't Air Force, 879 F.2d 829, 832 (Fed. Cir. 1989) ("Objections to the proceedings of an administrative agency must be made while it has an opportunity for correction in order to raise issues reviewable by the courts." (internal citation and alterations omitted))).

For these reasons, plaintiff has not established that the district court "revers[ed] an adverse determination of patentability." All the court did was reject one adverse finding. Even if

12

the court had reversed an adverse determination of patentability, plaintiff would still need to satisfy the second statutory requirement, that "a patent was issued under [the district court's] decision." § 154(b)(1)(C)(iii). This plaintiff cannot do, considering that the only claim reviewed by the district court was cancelled, and never issued as a patent at all. Plaintiff argues that this makes no difference, because a patent term adjustment is available "if a patent issues following an appeal that reverses an adverse determination of patentability," and the '796 patent issued following the district court's decision. [Dkt. No. 14] at 15 (emphasis added).

That is precisely the argument that this Court rejected in Sawstop I, which explained the "issue under" requirement in § 154(b)(1)(C)(iii) and resisted plaintiff's attempts to recast it as a "issue after" requirement:

> In addition to requiring that the Examiner's patentability determination be reversed for subsection (C)(iii) delay to be available, the statute also requires that a "patent was issued under [the PTAB's] decision." § 154(b)(1)(C)(iii). Plaintiff's case also fails to meet that statutory requirement. After the PTAB affirmed the Examiner's non-patentability conclusion, plaintiff chose not to contest the new ground for rejection; instead, it exercised its option to reopen prosecution, and amended its original claim 11. AR377. The Examiner rejected the amended claim 11 as unpatentable. AR392. Rather than appeal that decision, plaintiff amended claim 11 for a second time, and then requested continued examination of that twice-amended claim. AR493; AR584. In March of 2016, the twice-revised claim 11 was finally determined to be in allowable form, AR649; however, it underwent still further amendment at plaintiff's request. See, e.g., AR674. When the '476 Patent finally issued in December of 2016, more than a year and numerous administrative actions had passed since the PTAB issued its Decision on August 31, 2015. Despite this extensive post-decision activity, plaintiff argues that because the back-and-forth of amendment and examination that followed the PTAB's decision eventually resulted in the '476 Patent being issued, that patent "issued under" the PTAB's decision. [Dkt. No. 23] at 7 (urging that "issue under" includes any action that is "below, beneath, or in accordance with"). Plaintiff offers no legal authority to support this expansive interpretation, which would essentially substitute "after" for "under"—a substitution that is not supported by the statute's text.
>
> Plaintiff argues that defendant's requirement that a patent must issue as a direct result of the PTAB decision for § 154(b)(1)(C)(iii) to apply is "completely arbitrary," because whether a patent term adjustment is warranted depends on whether the "PTO would deem ... [an] outcome 'successful.' " [Dkt. No. 23] at 10.

13

> To the contrary, the requirement that a term adjustment only be available for a patent which "issued under" the PTAB's Decision creates the brightest of lines for the USPTO to follow: it need only ask whether, as a result of a PTAB decision, the applicant had patentable material or not. As this litigation shows, the '829 Application did not have any patentable claims after the PTAB issued its decision. The options plaintiff had then were to redraft the '829 Application (which it did) or appeal the PTAB's decision. Without significant redrafting of the application, the '476 Patent would not have issued. Although that patent issued temporally after the PTAB's Decision, it did not issue under the Decision, nor even as a result of the Decision. Instead, it issued after extensive further prosecution.

Sawstop I, 496 F. Supp. 3d at 949-50.

Just as in Sawstop I, plaintiff here engaged in "extensive post-decision activity" that undermines any argument that the '796 Patent "issued under" the district court's decision. 496 F. Supp. 3d at 949; see AR627 (March 27, 2017 amendment cancelling claim 1 and adding limitation to new independent claim 2); AR658 (July 14, 2016 amendment adding claim 21, amending claims 2 and 8-9, and substituting various figures). Plaintiff argues that this activity does not render § 154(b)(1)(C)(iii) inapplicable, because "an application may be subject to remand and further prosecution following appellate review, yet still qualify for" a patent term adjustment, [Dkt. No. 14] at 15 (citing 37 C.F.R. § 1.702(e)). The regulation plaintiff cites provides no support for its argument. Section 1.702(e) states: "If an application is remanded by a panel of the Patent Trial and Appeal Board and the remand is the last action by a panel of the Patent Trial and Appeal Board prior to the mailing of a notice of allowance ..., the remand shall be considered ... a decision in the review reversing an adverse determination of patentability as that phrase is used in 35 U.S.C. [§] 154(b)(1)(C)(iii),"; however, it also makes clear that a remand by the Board will not be final "if there is filed a request for continued examination" after the remand. That supports the conclusion in Sawstop I that the continued "back-and-forth of amendment and examination" after a decision by the Board or a court does not result in a patent

"issued under" that decision. To find otherwise "would essentially substitute 'after' for 'under'—a substitution that is not supported by the statute's text." Id. at 949.

Plaintiff has not met either of the two requirements imposed by § 154(b)(1)(C)(iii), because the district court's decision did not "revers[e] an adverse determination of patentability," and the '796 patent did not "issue[ ] under" that decision. As a result, "the USPTO's rejection of an additional term adjustment comports with the plain text of the statute, and was neither arbitrary nor capricious." Sawstop I, 496 F. Supp. 3d at 950.

2. The USPTO Regulations

In the Director's Decision denying plaintiff's patent term adjustment under § 154(b)(1)(C)(iii), the USPTO relied on the regulation interpreting the statute to require "a final decision in favor of the applicant." 37 C.F.R. § 1.703(e). The USPTO concluded that the district court order was not a "final decision in favor of the applicant" because "the record fails to establish [that] the District Court actually reversed the [double-patenting] rejection of Claim 1." AR867-68. Plaintiff argues that the USPTO's reliance on this its regulations interpreting § 154 should be given no weight because the regulations are not entitled to Chevron deference and are unreasonable in light of the text of the statute, [Dkt. No. 14] at 16-18; however, plaintiff acknowledges that "this Court's prior decision" in Sawstop I came to a contrary conclusion. As the Court found in Sawstop I:

> Plaintiff tries to avoid the impact of this regulation by citing Merck & Co. v. Kessler to support its argument that this regulation is not entitled to Chevron deference. [Dkt. No. 17] at 10; 80 F.3d 1543, 1549-50 (Fed. Cir. 1996). Merck held that Chevron deference was not appropriate for substantive rulemaking, id. at 1550; however, a regulation like this one that "merely clarifies or explains existing law or regulations is 'interpretative.'" Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1336 (Fed. Cir. 2008) (citation omitted). The Federal Circuit has consistently reviewed the USPTO's decisions about patent term adjustments using the Chevron framework. See Intra-Cellular, 938 F.3d at 1379; Supernus Pharm., Inc. v. Iancu, 913 F.3d 1351, 1356 (Fed. Cir. 2019); Gilead Scis., Inc. v. Lee, 778 F.3d 1341, 1346 (Fed. Cir. 2015).

15

> Under the Chevron framework, a court first asks "whether Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). As discussed above, Congress specifically required that to warrant a term adjustment for a patent which issues after a PTAB decision, the PTAB decision must have reversed a finding of nonpatentability. In other words, the decision must have been, to quote the regulation, "a final decision in favor of the applicant." That language simply restates Congress's conditions for adjustment. 37 C.F.R. § 1.703(e).
>
> If the matter were not resolved at this first step, the USPTO's regulation that patent term adjustment is only appropriate after a "final decision in favor of the applicant" would certainly survive the second step of the Chevron analysis, in which a court must ask whether the agency's interpretation is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. At this second step, the agency's interpretation survives as long as it is a "reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 (2009) (emphasis in original). There is certainly no contradiction between the statutory requirement that "a patent [be] issued under" the PTAB decision and the agency's interpretation that such an outcome would require a "final decision in favor of the applicant." That interpretation is particularly reasonable in light of the purpose of § 154(b). As plaintiff acknowledges, patent term adjustments are designed to avoid reductions to the term of a patent that result from delays that are "not the fault of the applicant." [Dkt. No. 17] at 12 n.3; [Dkt. No. 24] at 2. Before the PTAB reached its Decision, all of the '829 Application's claims, including claim 11, had been found unpatentable as obvious; after the PTAB issued its Decision, all of the claims, including claim 11, were still unpatentable as obvious. The substitution of a new ground for finding Claim 11 obvious did not shift the fault for the defects in claim 11 from the plaintiff to the USPTO. Therefore, the USPTO's regulation interpreting § 154(b)(1)(C)(iii) is appropriate, and the USPTO's decision denying plaintiff's request for the patent term adjustment is consistent with both the statute and the regulation.

Sawstop I, 496 F. Supp. 3d at 950-51.

Just as in Sawstop I, the purpose of § 154(b) is served by the Director's Decision in this matter. Before the district court's decision, claim 1 of the '527 Application was unpatentable due to the judicially created doctrine of obviousness-type double-patenting; after the district court's decision, claim 1 was still unpatentable under that same rejection, leading to plaintiff's decision to cancel the claim. Plaintiff could have cancelled claim 1 before seeking review in the district

16

court and arrived at precisely the same outcome, and the district court's reversal of one but not both grounds of rejection "did not shift the fault for the defects in claim [1] from the plaintiff to the USPTO." Sawstop I, 496 F. Supp. 3d at 951.

### 3. The USPTO Response to Comments

In addition to the USPTO's regulations, the Director's Decision denying plaintiff's patent term adjustment also relied on the USPTO's published responses to comments on its formal rulemaking, which clarify that a decision on review is final where it "reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection)." See AR868 n.1 (citing 65 Fed. Reg. 56366-01, 56376). The Director's Decision found that the record before it was "insufficient to establish that the ['796] patent was issued under a decision reversing all rejections of Claim 1 since the [double-patenting] rejection of claim 1 remained after the decision." AR868. Plaintiff argues that this guidance is not entitled to Skidmore deference and is inconsistent with the statute it interprets; however, plaintiff again acknowledges that this argument was rejected in Sawstop I. [Dkt. No. 14] at 16. As the Court found when considering this Skidmore argument in plaintiff's first lawsuit:

> [T]he plain language of § 154 and the USPTO's formal interpretive rule are consistent with the USPTO's published responses to comments on its formal rulemaking. In response to a comment questioning which kinds of "successful appeals" warranted adjustments under § 154(b)(1)(C)(iii), the USPTO explained that a successful appeal included any decision that "reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection)," 65 Fed. Reg. at 56376; in other words, an appeal would be deemed successful if it ultimately rejected the Examiner's conclusion of unpatentability and did not substitute a new ground for finding the claim unpatentable. Because the Decision on Appeal of the '829 Application clearly did not reverse the Examiner's ultimate conclusion rejecting all of the '829 Application's claims, this guidance plainly supports the USPTO's denial of plaintiff's patent term adjustment request.
>
> Again, plaintiff tries to avoid this interpretation by arguing that the comment does not constitute formal rulemaking. Although that characterization is accurate, the USPTO's published responses to questions are entitled to Skidmore deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140

17

> (1944) (holding that "rulings, interpretations and opinions" are not controlling, but should be given weight according to their "power to persuade"). Plaintiff argues against even that low level of deference, insisting that the agency's guidance is contrary to the statute. For the reasons discussed above, the Court rejects plaintiff's argument.
>
> Under Skidmore, courts are to afford whatever weight to an informal agency interpretation is warranted considering such factors as the validity and thoroughness of its reasoning, and its consistency with prior and subsequent agency practices. 323 U.S. at 140. For the same reasons that 37 C.F.R. § 1.703(e) is a reasonable interpretation of the statute under Chevron, the USPTO's informal guidance is based on valid reasoning: if claims were unpatentable when presented to the PTAB, any delay that results from confirming that they are unpatentable is attributable to the applicant, and not to the USPTO. The thoroughness of the USPTO's reasoning is apparent on the face of the guidance, which gives detailed responses to more than fifty comments on the final rulemaking. [footnote omitted] Last and most persuasive is the argument for consistency: as defendant correctly argues, Congress has amended 35 U.S.C. § 154 multiple times in the two decades during which the USPTO has been following the guidance in its response to comments, but it has never altered or clarified the language on which the USPTO's interpretation relies. See [Dkt. No. 20] at 20; Pub. L. 107-273, 116 Stat. 1758, 1904 (Nov. 2, 2002); Pub. L. 112-29, 125 Stat. 284, 290, 316, 335 (Sept. 16, 2011); Pub. L. 112-211, 126 Stat. 1527, 1531-32 (Dec. 18, 2012); Pub. L. 112-274, 126 Stat 2456, 2457 (Jan. 14, 2013). This strongly indicates Congress's satisfaction with defendant's interpretation of the statute.
>
> Considering the Skidmore factors, the USPTO's interpretation in its published responses to comments is one more basis that supports the USPTO's denial of a patent term adjustment.

Sawstop I, 496 F. Supp. 3d at 951-952.

Here, too, the USPTO's published responses support a finding that plaintiff is not entitled to a patent term adjustment under § 154(b)(1)(C)(iii). Although the district court reversed the anticipation rejection of plaintiff's claim 1, it did not explicitly or implicitly reverse the double-patenting rejection, and the '796 patent issued only after plaintiff cancelled claim 1. The district court decision therefore did not "reverse all of the rejections of at least one claim," and the patent did not "issue under" that decision.

## III. CONCLUSION

The Court finds that defendant's decision denying a patent term adjustment for the time that the '527 Application was on appeal to the United States District Court for the District of Columbia was consistent with 35 U.S.C. § 154(b)(1)(C)(iii), 37 C.F.R. § 1.703(e), and the USPTO's published responses to comments. As such, it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. For these reasons, Plaintiff's Motion for Summary Judgment to Correct the Patent Term Adjustment for U.S. Patent 9,927,796 [Dkt. No. 13] will be denied, Defendant's Motion for Summary Judgment [Dkt. No. 18] will be granted, and judgment under Fed. R. Civ. P. 58 will be entered in favor of defendant by an Order to be issued with this Memorandum Opinion.

Entered this 20th day of May, 2021.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge